IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

WENDY ANDERSON,                          )
                                         )
                    Plaintiff,           )
                                         )      No. 2:19-cv-2470-DCN-MHC
          vs.                            )
                                         )      **ORDER**
LOWCOUNTRY UROLOGY CLINICS, PA,          )
                                         )
                    Defendant.           )
_____)

This matter is before the court on Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 81, that the court grant in part and deny in part defendant Lowcountry Urology Clinics, PA's ("LUC") motion for partial summary judgment, ECF No. 37. For the reasons set forth below, the court adopts in part and rejects in part the R&R and grants in part and denies in part the motion for partial summary judgment.

## I.  BACKGROUND

The R&R ably sets forth the facts of this case, and the parties do not object to the R&R's rendition of those facts. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review. LUC is a urology-related medical practice in the Charleston, South Carolina area with multiple physicians and approximately fifty-five non-physician employees. LUC hired plaintiff Wendy Anderson ("Anderson") in 2008 to work as a computed tomography ("CT") technologist. She was at all times employed at-will. In May and September 2017, Anderson requested an individual raise. During discussions regarding her request for a raise, Anderson complained that a male LUC employee, Lucas McPherson ("McPherson"), earned a

significantly higher salary.  On December 27, 2017, LUC raised Anderson's salary by $5,000 and began paying her on a salaried, exempt basis effective January 1, 2018.  She had previously been paid approximately $58,000 per year at the hourly rate of $27.99, was considered nonexempt, and was paid time and a half for any time she worked over forty hours a week.  Effective January 1, 2018, as an exempt employee, Anderson was no longer eligible for overtime, and her new annual salary was $63,000.  On January 11, 2018, Anderson submitted paperwork for intermittent leave pursuant to the Family and Medical Leave Act ("FMLA") in connection with her alleged health problems and shingles outbreak from stress.  LUC never approved Anderson's FMLA request but granted Anderson's requests for various days off in 2018.  On November 30, 2018, LUC terminated Anderson's at-will employment, citing complaints made by Anderson's co-workers relating to her workplace behavior.

On August 30, 2019, Anderson filed the instant action against LUC, alleging (1) pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"); (2) retaliation in violation of the Equal Protection Act and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"); (3) pay discrimination in violation of Title VII; (4) wrongful discharge in violation of public policy ("WDPP"); (5) interference in violation of the FMLA, 29 U.S.C. § 2612(a); (6) alleged overtime pay violation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); and (7) violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 et seq. ("COBRA"). Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Cherry.

2

On September 30, 2020, LUC filed a motion for summary judgment on all of Anderson's claims except the claim for violation of COBRA.  ECF No. 37.  On November 3, 2020, Anderson responded, ECF No. 56, and on November 9, 2020, LUC replied, ECF No. 55.  On November 18, 2020, Anderson, by leave of the court, filed a sur-reply.  ECF No. 63.  On July 2, 2021, Magistrate Judge Cherry filed the R&R, recommending that the court grant in part and deny in part the motion for summary judgment.  ECF No. 81.  On July 26, 2021, LUC filed objections to the R&R, ECF No. 85, to which Anderson responded on August 10, 2021, ECF No. 89.  Also on July 26, 2021, Anderson filed objections to the R&R, ECF No. 86, to which LUC responded on August 9, 2021, ECF No. 87.  As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

3

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

The Magistrate Judge recommended that the court grant summary judgment in LUC's favor on the following claims: the discrimination and retaliation claims under the EPA; the Title VII disparate pay claim; the FMLA interference claim; and the WDPP claim. The Magistrate Judge recommended denying summary judgment on the Title VII retaliation claim and the FLSA claim. Both parties object to these recommendations set forth in the R&R. The court first addresses LUC's objections and then addresses Anderson's. Notably, neither party objects to the Magistrate Judge's recommendation

4

regarding Anderson's EPA or WDPP claims, and the court therefore adopts the R&R's analysis with respect to those claims and enters summary judgment in LUC's favor on the same.

### A. LUC's Objections

LUC objects to the Magistrate Judge's recommendation that the court deny summary judgment on Anderson's Title VII retaliation claim and FLSA claim. The court addresses both of these claims in turn, ultimately finding summary judgment warranted on the Title VII retaliation claim but not on the FLSA claim.

#### 1. Title VII Retaliation Claim

In its objections, LUC first argues that the Magistrate Judge improperly concluded that LUC was not entitled to summary judgment on Anderson's Title VII retaliation claim based on LUC's reclassification of Anderson as an exempt employee effective January 1, 2018.

Title VII forbids an employer from taking action that discriminates against an employee because that employee either has "opposed any practice made an unlawful employment practice" by Title VII or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Employees may prove that their employer retaliated against them for engaging in opposition activity either through direct evidence of retaliatory animus or under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

To succeed on a retaliation claim under the burden-shifting framework, Anderson must first establish that (1) she engaged in a protected activity, (2) her employer acted

adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). To establish an adverse employment action under the second element, "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). "[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) (citations and internal quotation marks omitted). In evaluating whether an action is material, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) (citing Burlington, 548 U.S. at 69).

Anderson alleges that her reclassification from an employee entitled to overtime pay to one exempt from overtime, effective January 1, 2018, was an adverse action in retaliation for her complaints about pay disparity. According to Anderson, "[LUC] took [a] materially adverse action against [her] by taking away her ability to earn overtime and reducing her wages" without reducing her hours or responsibilities. ECF No. 56 at 28–29. In its motion for summary judgment, LUC argues that Anderson fails to establish that, by reclassifying her as exempt in combination with a $5,000 raise, LUC materially reduced Andersons's compensation. The Magistrate Judge found that there is an issue of

material fact regarding whether Anderson's reclassification to exempt status was a materially adverse action.  The court disagrees.

Under the applicable framework, Anderson bears the burden of showing by a preponderance of the evidence that LUC's actions were materially adverse to her.  To meet this burden in her opposition to summary judgment, Anderson offered only her own declaration, in which she avers that, at the time she was reclassified, she was aware that she would need to work more overtime than in the past because a refurbished CT scanner was installed in December 2017, and because she was responsible for revising scanning protocols, conducting inspections, and obtaining proper accreditations for that machine. ECF No. 65-1 at ¶¶ 7–9.  She further avers that, as a result of these responsibilities and problems with the refurbished equipment, she worked more overtime hours in 2018 than she worked in 2017.  Id. at ¶¶ 10–11.  Relying on this affidavit, the Magistrate Judge concluded that "[t]here is conflicting evidence in the record regarding whether the loss of overtime resulted in a loss of pay to [Anderson]."  ECF No. 81 at 24.  This may be true, but, contrary to the Magistrate Judge's recommendation, such evidence is insufficient to create a genuine issue of fact as to whether LUC's reclassification of Anderson as an exempt employee in combination with a $5,000 raise was a materially adverse action.

The Magistrate Judge correctly relied on Fourth Circuit precedent in finding that "[a] reduction in overtime opportunities may constitute an adverse action for purposes of a Title VII retaliation claim."  ECF No. 81 at 24 (citing Ray, 909 F.3d at 670) (emphasis added).  However, in Ray, the Fourth Circuit did not hold that every reduction in an employee's opportunity for overtime hours constitutes an adverse action.  Rather, the Fourth Circuit found that a decrease in overtime hours could be an adverse employment

action where the evidence shows that the plaintiff lost a "significant part" of her earnings. Ray, 909 F.3d at 670.

Here, Anderson failed to make a prima facie showing that she lost a significant part of her earnings due to her conversion to exempt status, notwithstanding the $5,000 raise she received in conjunction with that conversion. Indeed, Anderson proffers no evidence to show the number of overtime hours she worked before her reclassification or that those hours constituted a significant part of her earnings. Likewise, she provides no evidence regarding the number of hours she worked in overtime after her reclassification. To establish her prima facie case, Anderson relies exclusively on her self-serving affidavit whereby she speculates that she worked more overtime after being classified as exempt due to an alleged increase in workload. She points to no other evidence tending to support her assertion that she worked more overtime after her reclassification, much less evidence that shows that the increase in overtime hours after her reclassification was so substantial that the $5,000 raise did not compensate for it. Without more, Anderson's conclusory say-so is insufficient to meet her burden of establishing a material adverse action as required for her prima facie case. See Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 315–16 (1st Cir. 2016) (finding that the plaintiff's bare allegation that his "overtime opportunities became reduced by at least one-third" failed to establish adverse action for a prima facie employment discrimination case where he "proffer[ed] no evidence of an actual reduction in his overtime opportunities outside of this assertion and his own say-so"); Altemus v. Fed. Realty Inv. Trust, 490 Fed. App'x. 532, 536 (4th Cir.

2012) (rejecting the plaintiff's attempt to create an issue of material fact through a "self-serving affidavit [that] was unsupported by the record").

On the other hand, LUC points to ample convincing evidence that negates Anderson's speculative assertions that her pay was substantially reduced by her change in status. For example, LUC's president, Dr. John James Britton, testified that he specifically set Anderson's raise at $5,000 because it exceeded how much she had earned in overtime in each of the prior two years. ECF 37-4, Britton Dep. at 132:4–133:11. LUC's chief financial officer, Beth Parsons, testified that Anderson worked a total of 70.59 overtime hours in 2017, 20.71 hours of which were for a one-time project in December 2017. ECF 55-1, Parsons Aff. at ¶ 4. Excluding the outlier month of December 2017, Anderson averaged less than 4.16 hours per month in overtime in 2017 despite managing two departments. Id. And even including that one-time project, her total overtime pay in 2017 equaled $2,963.72. Id. Moreover, while no evidence is before the court that Anderson worked more than forty hours in any workweek in 2018, LUC cites record evidence to show that Anderson often worked less than forty hours in a week. For example, her scheduled hours were Monday to Thursday from 8 a.m. to 5 p.m. and Friday from 8 a.m. to 2 p.m., with an hour lunch break each day—meaning her regular schedule required less than forty hours a week. ECF No. 37-3, Anderson Dep. at 51:3–52:2. Anderson was routinely tardy in 2018—often more than an hour late. Id. Ex. 33 at 168; ECF No. 37-12, Smith Aff. at ¶ 4. Although she received a one-hour lunch break each day, she often took ninety minutes to two-hour lunches in 2018. Anderson Dep. Ex. 33 at 163; Smith Aff. at ¶ 4. She was never on call. Anderson Dep. at 75:9–11. Anderson also frequently disappeared in 2018 during work hours without management

knowing where she went.  Id. Ex. 33 at 168; ECF No. 37-10, Donovan Dep. at 51:2–25.

She often left early before the end of the work day during 2018, and it was an "ongoing

problem."  Anderson Dep. Ex. 33 at 163, 169; ECF No. 37-5, Britton Aff. at ¶¶ 6, 10;

Donovan Dep. at 52:1–25.  She also took off multiple days from work related to FMLA

leave both in January 2018 and August 2018 for her own alleged serious health condition,

and none of her requests for FMLA leave were denied by LUC.  Anderson Dep. at

121:15–128:24, Ex. 19 at 139–140, Ex. 22 at 142-143, Ex. 33 at 163; ECF 37-16,

Donovan Aff. at ¶ 9.  Indeed, her doctor certified on January 23, 2018 that she would

need to miss one half-day per week for the next six months of 2018 for her FMLA

condition.  ECF 56-22 at 6–7.  Anderson admitted missing work at various times

throughout 2018, including in January 2018 when her mother underwent surgery and in

May 2018 when her father was hospitalized, as well as other dates to care for her parents.

Anderson Dep. at 109:21–25; 115:1–5; 119:9–17; ECF No. 56-5, Anderson Dep. at 9–12.

Anderson also testified that she took a vacation in August "every year" and that she had

vacation days approved and taken in 2018.  Anderson Dep. at 60:15–25, 119:13–25.

Finally, to counter Anderson's unsubstantiated assertion that her increased

responsibilities caused her to work more overtime in 2018, LUC cites testimony

indicating that her duties in the in-office dispensary ("IOD") decreased after LUC hired

Nicole Smoyer to assist in that department in March 2018.  Id. at 67:1–4.  Smoyer spent

fifty percent of her full-time hours assisting in the IOD.  ECF No. 56-7, Smoyer Dep. at

9:5–10:8.

  Overall, based on the record evidence, a reasonable jury could not find that

Anderson established by a preponderance of the evidence that her reclassification as an

employee exempt from overtime, accompanied by a $5,000 raise, was materially adverse to her.  Anderson's speculative assertions in her affidavit are merely a scintilla of evidence that are simply insufficient to present a material issue of fact meriting trial.  Because the court finds as matter of law that the LUC did not take materially adverse action against Anderson by reclassifying her as exempt and giving her a raise, Anderson has failed to establish a prima facie case of Title VII retaliation based on that reclassification,[1] and summary judgment is appropriate.  The court therefore declines to adopt the Magistrate Judge's recommendation as to this claim and instead enters summary judgment in LUC's favor.  Because it grants summary judgment on this basis, the court need not address LUC's objections to the Magistrate Judge's recommendation regarding its non-retaliatory reason for Anderson's pay reclassification and whether that reason was mere pretext for retaliation.

### 2.  FLSA Exempt Classification

LUC next objects to the Magistrate Judge's recommendation that a genuine issue of material fact exists as to whether Anderson was properly classified as exempt under the FLSA in 2018.  The FLSA requires employers to pay employees at least one and a half times their hourly rate for every hour worked beyond forty hours in a workweek.  29 U.S.C. § 207(a)(1).  However, an employee who works in a bona fide administrative position is exempt from the overtime pay provisions of the FLSA.  29 U.S.C. § 213(a)(1).  Exempt status is an affirmative defense, and the employer bears the burden of proving, by clear and convincing evidence, that the employee's job qualifies for an exemption.

---

[1] Anderson also claims to bring her Title VII retaliation claim on the basis of her termination.  The court addresses that argument in its discussions of Anderson's objections, infra.

11

Desmond v. PNGI Charles Town Gaming, LLC, 564 F.3d 688, 691 (4th Cir. 2009).

"Whether an employee is exempt from the FLSA's overtime requirements is a mixed

question of law and fact[.]"  Williams v. Genex Servs., LLC, 809 F.3d 103, 109 (4th Cir.

2015).  "In FLSA exemption cases, the question of how employees spend their working

time is a question of fact, but the ultimate question of whether the exemption applies is a

question of law."  Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 120 (4th Cir. 2015)

(citations and internal quotation marks omitted).  The United States Supreme Court

clarified that when making the determination of whether employees' activities are exempt

from the FLSA's overtime provisions, the exemption at issue should be given a "fair

(rather than a 'narrow') interpretation."  Encino Motorcars, LLC v. Navarro, 138 S. Ct.

1134, 1142 (2018) (citation omitted).  An employee qualifies as being "employed in a

bona fide administrative capacity" under the FLSA if: (1) the employee is compensated at

a salary of not less than $455 per week; (2) the employee's "primary duty is the

performance of office or non-manual work directly related to the management or general

business operations of the employer or the employer's customers"; and (3) the

employee's "primary duty includes the exercise of discretion and independent judgment

with respect to matters of significance."  29 C.F.R. § 541.200(a).  "The elements of this

exemption are conjunctive; all three must apply to an employee before that employee is

exempt from the overtime provisions of the FLSA."  Cockman v. Assignment Desk

Works LLC, 2021 WL 1738509, at *7 (D.S.C. May 3, 2021).

With regard to the second element of the administrative exemption, an

employee's "primary duty" is the principal, main, major or most important duty that the

employee performs.  29 C.F.R. § 541.700(a).  "Determination of an employee's primary

duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id.  The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. 29 C.F.R. § 541.201(a).  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  Work directly related to management or general business operations includes, but is not limited to,

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Id. § 541.201(b).  "Section 541.201 draws the distinction between an employee whose primary duty is administering the business affairs and one whose primary duty is to produce the commodity that the business exists to produce.  The latter is non-exempt." Ducharme v. Madewell Concrete, LLC, 2021 WL 2141728, at *5 (D.S.C. May 26, 2021) (citation and internal quotation marks omitted).  The "critical focus" of the second element is "whether an employee's duties involve the running of a business, as opposed to the mere day-to-day carrying out [of the business's] affairs."  Calderon, 809 F.3d at 123 (internal quotation marks and citations omitted).

The Magistrate Judge found that a genuine issue of material fact existed as to the second element of the administrative exemption—namely whether Anderson's primary duties "directly related to the management or general business operations of" LUC.  See 29 C.F.R. § 541.200(a).  The Magistrate Judge explained that while it is undisputed that

some of Anderson's duties, such as regulatory compliance, fit the bill, it was not clear from the record that those were her primary duties.  The Magistrate Judge cited a variety of Anderson's CT and IOD duties that "seem akin to a production or retail role in service of 'produc[ing] the commodity that the business exists to produce,' as opposed to carrying out the affairs of the business."  ECF No. 81 at 32 (citing Ducharme, 2021 WL 2141728, at *5).  For example, evidence suggests that Anderson's "daily duties in the IOD after May 2016 involved maintaining supplies, distributing medications to patients in accordance with the physicians' instructions, handling pre-certifications, and communicating with patients."  Id.  Likewise, in the CT department, Anderson was responsible for "performing CT scans on [LUC]'s patients in a timely manner, using proper techniques, while providing the highest standard of patient care and the best customer service."  Id. at 31.  In light of such evidence, the court agrees that it cannot find as a matter of law that Anderson's primary duties were exempt.

In its objections, LUC argues that ample evidence shows that Anderson's work in 2018 primarily related to running or servicing LUC's business.  For example, LUC points to evidence that Anderson was "singlehandedly running the IOD in 2018," "was totally responsible for regulatory compliance in the IOD in 2018," and was responsible for "managerial functions" such as "managing inventory, handling all contracts, ordering and maintaining all equipment, helping patients secure funding for their treatments, and processing of all prescriptions . . ."  ECF No. 85 at 12–13 (emphasis and internal citations omitted).  LUC also reiterates that Anderson's CT duties included "'Physicist and DHEC inspections,' revising department protocols, and pursuing ACR accreditation."  Id. at 14.  However, as the Magistrate Judge properly observed, the evidence of record could also

support a reasonable conclusion that Anderson's other duties, such as performance of CT scans and processing prescriptions—and not those cited by LUC—were primary. LUC complains that the Magistrate Judge improperly "combed the record" to locate such evidence. ECF No. 81 at 1 (referencing McCormack v. Boeing Co., 2014 U.S. Dist. LEXIS 42927, *16 (D.S.C. 2014)). The court disagrees. Although the caselaw referenced by LUC indicates that the court is under no obligation to search the record for evidence without specific citation by a party, none of the authorities cited by LUC support its proposition that the Magistrate Judge commits error by doing so. LUC concedes that it has the burden of proving that the administrative exemption applied—not Anderson. As such, Anderson was not required to put forth evidence or arguments regarding the exemption for her FLSA claim to survive summary judgment. The Magistrate Judge was entitled to consider the entirety of the record in assessing LUC's proffered evidence in the context of its motion for summary judgment—including portions of the record not specifically cited by Anderson in her opposition to the motion. The court finds that the Magistrate Judge properly considered the entirety of the record in finding conflicting evidence of how Anderson primarily spent her time and which of her duties were primary. Therefore, there is a genuine issue of material fact as to whether Anderson qualifies for the FLSA's administrative exemption, making summary judgment for LUC inappropriate on the issue. See Bertrand v. Children's Home, 489 F. Supp. 2d 516, 520 (D. Md. 2007) ("[A]lthough particular items of evidence in the record concerning Bertrand's duties support one or the other of the parties' arguments, a reasonable jury could easily conclude that Bertrand's work was essentially and

predominantly clerical in nature, and not administrative or managerial.").  The court overrules the objection.

### B.  Anderson's Objections

Anderson objects to the Magistrate Judge's recommendation that the court grant summary judgment in LUC's favor on her claims for retaliatory termination under Title VII, pay discrimination under Title VII, and FMLA interference.  The court discusses each of Anderson's objections in turn, ultimately concluding that the Magistrate Judge did not err in her recommendations as to these three claims.

### 1.  Title VII Retaliatory Termination

Anderson first objects to the Magistrate Judge's finding that Anderson has not established a Title VII retaliation claim based on her termination.  As previously noted in the context of Anderson's reclassification as an exempt employee, to succeed on a retaliation claim under the burden-shifting framework, Anderson must first make a prima facie case establishing that (1) she engaged in a protected activity, (2) her employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action.  Hoyle, 650 F.3d at 337.  Anticipating that Anderson would base the Title VII retaliation claim alleged in her complaint on her termination, LUC argued in its summary judgment motion that Anderson failed to establish a causal connection—element three of the prima facie case—between her complaints about pay in November 2017 and her termination in November 2018.  ECF No. 37-1 at 24–25.  Anderson failed to counter these arguments in her response or her sur-reply.  Instead, for purposes of her Title VII retaliation claim, she only argued that LUC's act of converting her to an exempt employee was retaliatory, as addressed supra.

16

ECF No. 56 at 29.  Accordingly, the Magistrate Judge found that Anderson "has not made any arguments regarding her <u>prima facie</u> case or pretext" to show that she was terminated in retaliation for her complaint of pay discrimination.  ECF No. 81 at 22 n.2. The Magistrate Judge thus found summary judgment appropriate as to that claim.

In her objections, Anderson attempts for the first time to put forth arguments and evidence to support a <u>prima facie</u> case of retaliatory termination.  Specifically, Anderson argues that LUC's "retaliatory animus," such as starting to keep notes on Anderson's activities, ignoring her FMLA application, excluding her from educational dinners, and inappropriately reprimanding her and accusing her of wrongdoing, is sufficient to find a causal connection between Anderson's complaint of pay discrimination and her termination eleven months later.  Anderson's efforts are untimely and improper.

"Consideration of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration" on a motion for summary judgment. <u>Hynes v. Squillace</u>, 143 F.3d 653, 656 (2d Cir. 1998).  When a magistrate judge is hearing a matter pursuant to his or her authority to make a report and recommendation, "a claimant must present all his claims squarely to the magistrate judge that is, the first adversarial forum, to preserve them for review."  <u>McCarthy v. Giron</u>, 2014 WL 2696660, at *13 (E.D. Va. June 6, 2014).  "A petitioner whose case is referred to the Magistrate Judge for initial handling (for findings, conclusions, and recommendation) cannot for the first time in his objections to the Magistrate Judge's findings, conclusions, and recommendation raise a ground not asserted in the petition as it existed when the matter was before the Magistrate Judge for consideration."  <u>Thornton v. Johnson</u>, 2001 WL 331983, at *1 (N.D. Tex. Apr. 3, 2001); <u>see also</u> <u>Clark v. Thompson</u>, 2014 WL 1234347,

17

at *2 (D.S.C. March 25, 2014) (noting a party's new argument raised for the first time in his objections "must be overruled as untimely and thus improper"); Buford v. Ocwen Loan Servicing, LLC, 2018 WL 6617646, at *3 (E.D. Va. Dec. 18, 2018) ("Parties may not raise entirely new arguments for the first time in their objections to a magistrate judge's report.").  Anderson's utter failure to make any argument as to her prima facie case of retaliatory termination doomed such a claim, and the Magistrate Judge did not err in recommending that the court not permit Anderson's retaliation claim to proceed to trial on the basis of her termination.  If the court were to consider Anderson's belated arguments and evidence, it would defeat the purpose of 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(g) and create inefficiencies for both the court and the parties by giving Anderson a second bite at the apple.  Therefore, the court overrules the objection.

### 2. Title VII Pay Discrimination

Anderson next objects to the Magistrate Judge's recommendation that the court grant summary judgment in LUC's favor on the Title VII pay discrimination claim. To establish a prima facie case of sex discrimination, the plaintiff must prove the following elements: (1) membership in a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) different treatment from similarly-situated employees outside the protected class or that there is some other evidence giving rise to an inference of unlawful discrimination. Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705, 719–20 (D.S.C. 2014); see Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Bryant v. Aiken Reg'l Med.

Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003).  The Magistrate Judge found that Anderson's claim failed at the fourth element.

In determining whether a comparator is similarly situated, "courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019) (internal quotation marks omitted), as amended (Mar. 26, 2019), cert. denied, 140 S. Ct. 381 (2019).  To establish this element, "the plaintiff must provide evidence that the proposed comparators are not just similar in some respects, but similarly-situated in all respects." Id. (internal quotation marks omitted and emphasis in original); see also Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019) ("[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal quotation marks omitted).

The Magistrate Judge found that, as a matter of law, Anderson and McPherson "were not similarly-situated in all respects."  ECF No. 81 at 18.  Specifically, "[t]hey held different positions, performed different duties, worked in different departments and in different locations, maintained different hours, and had different supervisors." Id. Anderson objects to this finding and asserts that she has submitted relevant and probative evidence sufficient to support a jury verdict in her favor.  However, Anderson relies

19

entirely on her newly submitted seventh declaration in arguing the similarity between

herself and McPherson.  ECF No. 86 at 14–15.  For reasons already explained, this court

will not consider such evidence that was not properly before the Magistrate Judge.

Moreover, even if it were on the record before the Magistrate Judge, it would not alter the

conclusion that summary judgment is appropriate.  Anderson does not dispute the

Magistrate Judge's finding that she and McPherson had different titles, performed

different duties, reported to different physicians, worked at different locations, and

worked different hours.  And her affidavit does not create a genuine issue of material fact

on the matter.  The Magistrate Judge properly relied on these differentiators in finding

that the two were not similarly situated in all respects as a matter of law.  Therefore, the

court overrules Anderson's objections regarding the fourth element of this cause of

action.

 The Magistrate Judge found that not only did Anderson fail to establish a prima

facie case of sex discrimination, but summary judgment is also appropriate because LUC

has proffered a legitimate, nondiscriminatory reason for discharging Anderson, and she

did not submit evidence showing that the reason is merely pretext for discrimination.

Once Anderson establishes her prima facie case, the burden of production shifts to LUC

to articulate a legitimate, non-discriminatory reason for the challenged employment

action.  Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010).

"Finally, if [LUC] carries this burden, [Anderson] then has an opportunity to prove by a

preponderance of the evidence that the neutral reasons offered by the employer 'were not

its true reasons, but were a pretext for discrimination.'"  Id. (quoting Tex. Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 253 (1983)).  The court agrees with the Magistrate

Judge that LUC satisfied its burden, while Anderson did not.

LUC stated in its motion for summary judgment that the pay disparity at issue was

a result of McPherson's wage history prior to employment at LUC, the differences in his

duties, and the higher revenue he generated for LUC.  As the Magistrate Judge noted,

LUC produced evidence supporting these non-discriminatory reasons.  See, e.g., ECF No.

37-14, McPherson Aff. at ¶¶ 6, 15, (testifying that when he was recruited by LUC, he told

LUC that he would need to be paid the same salary and benefits he received from his

prior employer and ultimately received and accepted an offer for $1,000 less); id. at ¶ 15

(testifying that he generated substantial income for the practice); ECF No. 37-15, Parsons

Aff. at ¶ 4 (testifying that McPherson "brought in far more revenue" from 2015 to 2018

than Anderson).  On the other hand, the Magistrate Judge noted that Anderson "[did] not

make any argument regarding pretext in her Response."  ECF No. 81 at 20.

In her objections, Anderson argues that "[LUC]'s non-discriminatory reasons

don't hold up."  ECF No. 86 at 16.  Again, relying on her newly submitted seventh

declaration, she asserts that she "also brought in substantial revenue to LUC by taking on

the additional responsibility of the IOD" and "was also paid substantially more when she

applied to LUC."  ECF No. 86 at 16.  As a matter of law, Anderson cannot satisfy her

burden of persuasion with these untimely, bare assertions.  This evidence was not

properly before the Magistrate Judge in formulating her R&R.  And even if it were, it

does fully address LUC's articulated reasons for the pay disparity.  Anderson does not

mention how much she was paid at her previous employment or otherwise show that she

was paid substantially more in that position.  She likewise does not assert that she

attempted to negotiate with LUC to match her previous salary, as McPherson did. She points to no evidence that shows the amount of revenue that she brought in for LUC as compared to McPherson.[2] Indeed, Anderson fails to provide any evidence other than her untimely, self-serving declaration to carry her burden and that evidence is no more than a mere scintilla. Without more, a reasonable factfinder could not, without speculating, find that the neutral reasons offered by LUC were pretextual, rather than the true reasons for the difference in McPherson's and Anderson's salaries. Therefore, Anderson's claim fails, and summary judgment is alternatively warranted on this ground.

### 3. FMLA Interference

Finally, Anderson objects to the Magistrate Judge's recommendation that LUC is entitled to summary judgment on her FMLA interference claim. The FMLA grants eligible employees up to twelve workweeks of protected leave for a "serious health condition" that makes the employee unable to perform the functions of her job. 29 U.S.C. § 2612 (a)(1)(D). Upon returning from FMLA, the employee is entitled to be restored to her prior position or an equivalent position. 29 U.S.C. § 2614(a)(1); Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 426 (4th Cir. 2015). It is unlawful for an employer to interfere with such rights. 29 U.S.C. § 2615(a)(1). Interference includes refusing to authorize FMLA leave as well as discouraging employees from using FMLA

---

[2] The court acknowledges that LUC is the party that would possess information regarding the comparative revenues generated by McPherson and Anderson and that Anderson argues that Parson was uncooperative in providing details regarding that revenue. However, Anderson could have properly filed a motion to compel LUC's production of documents related to those revenues or otherwise sought court involvement in Parson's alleged lack of cooperation. Ultimately, Anderson bears the burden of persuasion in proving pretext, and it was her obligation to proffer evidence to support her assertion of pretext. Because Anderson has not done so at this stage of litigation, the court cannot permit this claim to proceed to trial.

leave.  29 C.F.R. § 825.220(b).  To prove an FMLA interference claim, the plaintiff must show: (1) she was entitled to an FMLA benefit; (2) the defendant interfered with provision of that benefit; and (3) that interference caused harm to the plaintiff.  Adams, 789 F.3d at 427 (citations omitted).  The Magistrate Judge found that Anderson failed to produce evidence establishing the third element of her FMLA interference claim—harm.

Harm or prejudice can be proven by showing the plaintiff lost compensation or benefits, sustained other monetary losses, or suffered some loss in employment status, as a result of the violation.  29 U.S.C. §§ 2617(a)(1)(A) and (B); Anderson v. Discovery Communs., LLC, 517 F. App'x 190, 197–98 (4th Cir. 2013) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).  The Magistrate Judge explained that Anderson testified that all of her requested days off were approved.  Moreover, the R&R noted that Anderson does not dispute that after she requested FMLA leave, she remained in her same position at her same pay rate.  Because Anderson failed to produce "evidence showing that she lost compensation or benefits, sustained other monetary losses, or suffered some loss in employment status as a result of the failure of [LUC] to explicitly approve or deny her FMLA request," the Magistrate Judge found summary judgment appropriate.  ECF No. 81 at 36.

In her objections, Anderson again raises arguments that were not properly before the Magistrate Judge.  Anderson asserts that she was harmed notwithstanding the fact that LUC approved all her requested days off because "after she ran out of vacation days, LUC borrowed against her future vacation, rather than allow her to take unpaid time."  ECF No. 86 at 11.  Once again, this argument comes too late and is supported only by Anderson's own untimely declaration.  Anderson provides no supporting evidence to

verify her bare assertion that she lost future vacation days other than her own say-so, and even if she had, she cites no caselaw to support her assertion that such a loss amounts to harm or prejudice.  Moreover, because she was terminated in November 2018, the court fails to see how Anderson was harmed by any loss of future vacation days.  It appears to the court that, if anything, Anderson benefited from using paid vacation time that she had not and would not accrue.  At this stage, Anderson's belated argument is insufficient to withstand summary judgment.  Therefore, the court overrules the objection and grants summary judgment against Anderson's FMLA interference claim.

### IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART AND REJECTS IN PART** the R&R and **GRANTS IN PART AND DENIES IN PART** LUC's motion for partial summary judgment in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 27, 2021**
**Charleston, South Carolina**