# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| WENDY ANDERSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LOWCOUNTRY UROLOGY CLINICS, PA, )<br>)<br>Defendant. )<br>_____ ) | No. 2:19-cv-2470-DCN<br><br>**ORDER** |

The following matter is before the court on plaintiff Wendy Anderson's ("Anderson") motion to reconsider, ECF No. 92. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

Defendant Lowcountry Urology Clinics, PA ("LUC") is a urology-related medical practice in the Charleston, South Carolina area with multiple physicians and approximately fifty-five non-physician employees. LUC hired Anderson in 2008 to work as a computed tomography ("CT") technologist. She was at all relevant times employed at-will. In May and September 2017, Anderson requested an individual raise. During discussions regarding her request for a raise, Anderson complained that a male LUC employee, Lucas McPherson ("McPherson"), earned a significantly higher salary. On December 27, 2017, LUC raised Anderson's salary by $5,000 and began paying her on a salaried, exempt basis effective January 1, 2018. She had previously been paid approximately $58,000 per year at the hourly rate of $27.99, was considered nonexempt, and was paid time and a half for any time she worked over forty hours a week. Effective January 1, 2018, as an exempt employee, Anderson was no longer eligible for overtime,

1

and her new annual salary was $63,000. On January 11, 2018, Anderson submitted paperwork for intermittent leave pursuant to the Family and Medical Leave Act ("FMLA") in connection with her alleged health problems and shingles outbreak from stress. LUC never approved Anderson's FMLA request but granted Anderson's requests for various days off in 2018. On November 30, 2018, LUC terminated Anderson's at-will employment, citing complaints made by Anderson's co-workers relating to her workplace behavior.

On August 30, 2019, Anderson filed the instant action against LUC, alleging (1) pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"); (2) retaliation in violation of the Equal Protection Act and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"); (3) pay discrimination in violation of Title VII; (4) wrongful discharge in violation of public policy ("WDPP"); (5) interference in violation of the FMLA, 29 U.S.C. § 2612(a); (6) overtime pay violation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); and (7) violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 et seq. ("COBRA"). Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Molly H. Cherry.

On September 30, 2020, LUC filed a motion for summary judgment on all of Anderson's claims except the claim for violation of COBRA. ECF No. 37. On July 2, 2021, Magistrate Judge Cherry filed a report and recommendation ("R&R"), recommending that the court grant in part and deny in part the motion for summary judgment. ECF No. 81. On September 27, 2021, the court adopted in part and rejected in

part the R&R and granted in part and denied in part the motion for summary judgment (the "Order on the R&R"). ECF No. 91. Of particular relevance to the instant motion, the court granted summary judgment on Anderson's Title VII retaliation claim.

On October 1, 2021, Anderson filed a motion to reconsider the Order on the R&R. ECF No. 92. On October 6, 2021, LUC responded in opposition. ECF No. 93. Anderson did not file a reply, and the time to do so has now expired. As such, the motion is now ripe for the court's review.

## II. STANDARD

Federal Rule of Civil Procedure 54(b) is the proper avenue by which a party may seek reconsideration of an interlocutory order.[1] Spill the Beans, Inc. v. Sweetreats, Inc., 2009 WL 2929434 at *1 (D.S.C. Sept. 8, 2009). Rule 54(b) provides that:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citations omitted); see Moses H. Cone Mem. Hosp. v. Mercury

---

[1] Both Anderson and LUC argue the motion under Federal Rule of Civil Procedure 59(e). However, that rule applies only to final orders, which the Order on the R&R is not because it adjudicated fewer than all the claims and final judgment has not yet been entered.

3

Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Compared to motions under Rule 59(e) for reconsideration of final judgments, "Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (citation omitted).

"The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion" but has noted that Rule 54(b) motions "are 'not subject to the strict standards applicable to motions for reconsideration of a final judgment.'" Ashmore v. Williams, 2017 WL 24255 at *2 (D.S.C. Jan. 3, 2017) (quoting Am. Canoe Ass'n, 326 F.3d at 514). "In this regard, district courts in the Fourth Circuit . . . look to the standards of motions under Rule 59 for guidance." Id. (citations omitted). Therefore, Rule 54(b) reconsideration is appropriate: "(1) to follow an intervening change in controlling law; (2) on account of new evidence [discovered during litigation as opposed to after the judgment]; or (3) to correct a clear error of law or prevent manifest injustice." Id. (citation omitted); Carlson, 856 F.3d at 324. Like a Rule 59(e) motion, a Rule 54(b) motion "may not be used merely to reiterate arguments previously rejected by the court." Sanders v. Lowe's Home Ctrs., LLC, 2016 WL 5920840 at *4 (D.S.C. Oct. 11, 2016) (citation omitted).

### III.   DISCUSSION

Anderson argues that the court committed clear errors of law in its Order on the R&R and that she suffered manifest injustice as result. In particular, Anderson challenges the Order on the R&R in two respects. First, she contends that the court

erroneously found that Anderson failed to make a prima facie showing that her reclassification to an employee exempt from overtime, accompanied by a $5,000 raise, was materially adverse to her.  Second, she maintains that the court erroneously did not consider "Dr. Britton's November 27, 2017, [sic] reprimand an adverse employment action."  ECF 92 at 8.  The court discusses each argument in turn, ultimately disagreeing on both fronts.

### A.  Failure to Make a Prima Facie Showing of Material Adverse Action

In her motion to reconsider, Anderson first disputes the court's finding that she failed to make a prima facie showing that her reclassification and accompanying $5,000 raise was a material adverse action.  Specifically, Anderson argues that the court committed clear error by (1) "requiring [Anderson] to produce evidence that did not exist," id. at 2; (2) "contradict[ing] the Fourth Circuit's decision in Ray v. Int'l Paper Co., 909 F.3d 661 (4th Cir. 2018)," id. at 3; and (c) "failing to consider [that Anderson]'s salary was based on a 37-hour work week," along with her resulting "gap pay," id. at 6.  None of these arguments convince the court that Anderson satisfied her prima facie burden of showing a material adverse action, and the court therefore stands by its finding on the matter.

To begin, Anderson complains that the court granted summary judgment on her Title VII retaliation claim because "she provide[d] no evidence regarding the number of hours she worked in overtime after her reclassification."  ECF No. 92 at 2 (citing ECF No. 91 at 8).  Anderson argues that the court's reasoning was manifestly unjust because that evidence does not exist, since LUC stopped keeping records of her time after they reclassified her as an exempt employee.  Accordingly, Anderson argues that LUC "is

5

essentially being rewarded" for its misclassification and resulting failure to maintain time records for her. ECF No. 92 at 3.

In this respect, Anderson's argument mischaracterizes the court's order. Nowhere in its Order on the R&R did the court state that Anderson was specifically required to produce company time records to survive summary judgment. Rather, the court simply noted that Anderson had the burden of proffering more than a mere scintilla of evidence that the loss of her overtime opportunities amounted to a loss of a significant part of her earnings, notwithstanding the $5,000 accompanying raise she received. Such evidence could have come in many forms, including statements by third-party witnesses, contemporaneous notes, or other documents suggesting that she would have made significantly more in 2018 had she retained her prior pay structure. Indeed, Anderson did not attempt to show by a simple pay comparison that she earned significantly more—or even slightly more—in 2017 as an hourly non-exempt employee than she did in 2018 as a salaried exempt employee. Instead, Anderson argued that she worked so many more overtime hours in 2018 after being reclassified as exempt that her resulting earnings were substantially less than they would have been under her previous pay structure. Yet to support that theory, Anderson offered only her speculative, self-serving affidavit that she "worked more overtime" hours after being classified as exempt. ECF No. 59-2 ¶ 8.[2]  As

---

[2] In her motion to reconsider, Anderson cries foul because, in her view, the court rejected her affidavit as self-serving but accepted the "self-serving declarations from the owners of the company and current employees." ECF No. 92 at 7. However, the Order on the R&R clearly sets forth the deposition testimony and affidavits of multiple witnesses, contemporaneous documents, and Anderson's own testimony that the court relied on in rejecting Anderson's speculative assertions that she worked more overtime after her reclassification. Regardless, it was Anderson's—not LUC's—burden to make a prima facie showing of an adverse employment action. Therefore, even if LUC presented no evidence on the matter, "Anderson's speculative assertions in her affidavit are merely

the court observed, Anderson "point[ed] to no other evidence tending to support her assertion that she worked more overtime after her reclassification, much less evidence that shows that the increase in overtime hours after her reclassification was so substantial that the $5,000 raise did not compensate for it." ECF No. 91 at 8. In other words, although Anderson stated that she "worked more overtime" after her reclassification, she utterly failed to state or provide any evidence to show that those hours would have resulted in more than the $63,000 annual salary she received had she been compensated at her hourly rate with overtime pay. At best, Anderson suggests that she did not receive as large of a raise as she deserved; however, she does not show that she lost any earnings, much less a significant part thereof, as a result of the complained-of employment action. Because Anderson failed to produce more than a mere scintilla of evidence in support of her prima facie showing of material adverse action based on her reclassification, her Title VII retaliation claim fails as a matter of law.

Next, Anderson challenges the court's Order on the R&R as "contradict[ing] the Fourth Circuit's decision in Ray v. Int'l Paper Co., 909 F.3d 661 (4th Cir. 2018)" by "requiring [Anderson] to produce evidence that her wages decreased." ECF 92 at 3. Anderson maintains that, under Ray, she is only required to show that she lost "the benefit of overtime pay," not a loss of income, to establish an adverse action. Anderson is simply incorrect in her interpretation of Ray. As noted in the Order on the R&R, the Fourth Circuit in Ray "did not hold that every reduction in an employee's opportunity for overtime hours constitutes an adverse action." ECF 91 at 7 (citing Ray, 909 F.3d at 670

---

a scintilla of evidence that are simply insufficient to present a material issue of fact meriting trial." ECF No. 91 at 11.

7

("We need not decide whether every reduction in an employee's overtime hours can qualify as an adverse action.")). Instead, the court in Ray noted that an actionable adverse action includes "discharge, demotion, <u>decrease in pay or benefits</u>, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Id. (quoting Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999)) (emphasis in original). Unlike Anderson, the plaintiff in Ray proffered evidence that as a result of her loss of voluntary overtime opportunities, "she earned substantially less income after [the protected activity]" than before. Ray, 909 F.3d at 670.[3] The Fourth Circuit held that "this decrease in income constituted an adverse action." Id. (citing Boone, 178 F.3d at 255). Accordingly, the Ray opinion does <u>not</u> stand for the proposition that the mere loss of overtime opportunity itself—without evidence of a resulting loss of income—constitutes a "decrease in pay or benefits" sufficient to establish an adverse action under Title VII, and the court does not find an error of law in its Order on the R&R in that regard.

Finally, Anderson argues that the court erroneously failed to consider the "gap pay" she claims to have lost as a result of her reclassification. Essentially, Anderson

---

[3] In this respect, Ray and the instant action are distinguishable. In Ray, after complaining about the alleged harassment, the plaintiff lost the opportunity to work "voluntary overtime," which had been available to her in four-hour blocks "almost daily," and received no corresponding benefit in return. Ray, 909 F.3d at 665. She provided competent evidence that she earned substantially less income as a result—if not for the whole year then at least for a period of time within that year. Id. at 668, 670. In contrast, as part of her reclassification to an exempt employee, Anderson was provided with a $5,000 increase in pay based on her prior years' earnings to compensate her for lost overtime opportunities. Anderson provides no evidence for a reasonable jury to conclude that her pay decreased during any period of time in 2018 as a result nor does she cite any authority for the proposition that a reclassification to exempt status and corresponding increase in pay is prima facie evidence of an adverse action under Title VII's anti-retaliation provision.

argues that because her work schedule only contemplated thirty-seven hours a week, after her reclassification she "not only lost the benefit of overtime time pay, but she also lost the benefit of 3 hours of straight time pay." ECF No. 92 at 7. Therefore, Anderson maintains that after taking her "gap pay" into account, she would have made more under her prior pay structure if she had worked even one hour of overtime per week in 2018. The court rejects Anderson's arguments as untimely. Anderson makes no mention of her "loss of gap pay" in her response in opposition to LUC's motion for summary judgment, ECF No. 56, or in her sur-reply, ECF No. 63. The Magistrate Judge accordingly did not discuss "gap pay" in her R&R, ECF No. 81, and Anderson did not object to the absence of that discussion or mention "gap pay" at all in her objections, ECF No. 86. Anderson is not permitted to use her motion to reconsider to raise arguments that she omitted before the court entered its Order on the R&R, and her "gap pay" argument fails on this basis alone. Moreover, even if the court were to consider Anderson's argument, the court finds it unconvincing. If, in 2018, Anderson worked only thirty-seven hours per week at her prior rate of $27.99 an hour, she would have earned $53,852.76 (52 weeks * 37 hours * $27.99 base pay rate) under her prior pay structure. If Anderson worked 40 hours per week at $27.99 an hour, she would have earned $58,219.20 (52 weeks * 40 hours * $27.99 base pay rate) under her prior pay structure, including "gap pay." And if she worked one hour of overtime per week in 2018, she would have earned $60,402.68 ($58,219.20 + ($41.99 overtime pay rate * 52 weeks)). Because Anderson's annual salary was $63,000 after her reclassification, the scenario Anderson posits to show how her loss of "gap pay" resulted in a substantial loss of income simply does not add up. Thus, Anderson fails to convince the court that a genuine issue of material fact exists as

to whether Anderson's reclassification resulted in a substantial loss of income, even if it accounted for loss of "gap pay."

### B. Reprimand as an Adverse Action

Anderson additionally complains that the court committed a clear error of law by failing to conclude that a "reprimand" by Dr. John J. Britton in November 2017 constituted an adverse employment action under Title VII. Fatally, Anderson argues <u>for the first time</u> in her motion to reconsider that this reprimand constituted an adverse employment action. She did not mention this reprimand as the basis of her retaliation claim in her response in opposition to the motion for summary judgment or in her sur-reply thereto. The Magistrate Judge likewise did not find that this reprimand constituted an adverse action, and Anderson did not object to the R&R on that basis. As such, the issue is not properly raised in the motion to reconsider, and the court rejects this belated argument as untimely. See <u>Regan v. City of Charleston</u>, 40 F. Supp. 3d 698, 702 (D.S.C. 2014) ("A motion for reconsideration . . . may not be used to raise arguments or introduce evidence that could have been addressed or presented previously." (internal citations omitted)).

### IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to reconsider.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 24, 2022**
**Charleston, South Carolina**

11